IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MILDRED GARRETT, }<br>  }<br>    *Plaintiff*, }<br>v. }<br>  }<br>METROPOLITAN TRANSIT AUTHORITY }<br>OF HARRIS COUNTY, TEXAS, }<br>  }<br>    *Defendant*. } | Civil Case No. 4:07-cv-339 |

**MEMORANDUM OPINION**

Pending before the Court in this employment discrimination and retaliation case is a motion for summary judgment (Doc. 24) filed by Defendant Metropolitan Transit Authority of Harris County, Texas ("Metro"). Upon review and consideration of this document, the response and replies thereto, and the relevant legal authority, the Court hereby ORDERS that Defendant's motion is GRANTED.

I.    Background and Relevant Facts

Plaintiff Mildred Garrett ("Garrett") alleges that Defendant Metro discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Specifically, Plaintiff contends that she was discriminated against because of her disability and retaliated against because she filed a worker's compensation claim, a written complaint with David Feeley, Vice President of Operations, ("Feeley"), and a sexual harassment lawsuit in state court.

Garrett worked as a bus operator for Metro until her termination on June 1, 2005. (Pl.'s Dep., Doc. 24 Ex. A at 10). Metro claimed to have terminated Garrett's employment

because she violated the Metro Employee Performance Code and Work Rules (the "Code"), specifically Article 510 and Article 1501-A, Paragraph 6. (Doc. 24 Ex. B). The Court will outline each of these provisions, as well as the manner in which Plaintiff violated them, in turn.

On March 31, 2005, Metro received a passenger complaint against Garrett for unsafe bus operation. (Ramirez Aff., Doc. 24 Ex. E at 1). If and when such a complaint is made, Metro attempts to discuss it with the employee to determine whether the employee has, in fact, violated any provision in the Code. (*Id.*). If necessary, Metro imposes disciplinary action against the bus operator in accordance with the Code. (*Id.*). Upon receiving the March 31, 2005, complaint about Garrett, Bobby Ramirez ("Ramirez"), a Superintendent of Transportation at Metro, ("Ramirez") provided Garrett with written notice to report to his office on April 7, 2005. (*Id.*). According to Article 510 of the Code, an employee must report to the Superintendent's office within 48 hours of receiving proper notice. (Doc. 24 Ex. B at 8). Garrett, however, failed to do so. (Ramirez Aff., Doc. 24 Ex. E at 1). Ramirez, therefore, provided Garrett with final written notice to report to his office on April 21, 2005, which Garrett neglected to do. (*Id.*).

On April 14, 2005, Metro received an additional complaint about Garrett's job performance, specifically her failure to pick up passengers at a bus stop in violation of Article 702 of the Code. (Doc. 24 Ex. B at 4). This was the second time in a month that Garrett violated this provision. (*Id.*). Metro, therefore, issued her a three-day suspension (*id.*), which Garrett then complained about to Feeley. (Pl's Dep., Doc. 24 Ex. A at 35). In her letter to Feeley, Garrett requested that he transfer her "to another department within the company due to stress and the constant harassment [she has] suffered on behalf of Metro supervisors and superintendents[.] [T]his has [a]ffected [her] health greatly." (Doc. 24 Ex. G). Garrett lists the

complaints she has with three individuals, Richard Forbus ("Forbus"), Karen Green ("Green"), and Lori Hyeburger ("Hyeburger").

Feeley put the three-day suspension on the "back burner" and instructed Karen Kauffman ("Kauffmann") to conduct an internal EEO investigation regarding Garrett's claims of sexual harassment from Forbus, Green and Hyeburger. Doc. 24 Exh. I at 12. Kauffmann found Garrett's claims to be without factual foundation. Doc. 24 Exh. B at 12-17. Specifically, Kauffman found that Green had been the subject of many disciplinary actions outside of the West facility where Forbus, Green and Hyeburger operated. *Id*. Furthermore, Garrett had requested to be returned to the West facility, casting doubt on her claims that she sought to escape from harassment there. *Id*.

In the meantime, Garrett took it upon herself to ignore further requests that she report to her supervisor for failing to pick up passengers. Doc. 24 Exh. B at 3. Garrett claimed she did so because Feeley had told her disciplinary actions were on hold during the EEO investigation. Doc. 24 Exh. On May 4, 2005, Forbus requested she report to the superintendent's office via notice to the communal mailbox for operators starting with the letter "G." Doc. 24 Exh. B at 3. When Garrett failed to report, Forbus sent a second, final notice on May 12, 2005. *Id*. Garrett took a vacation so the time to respond to this final warning notice was delayed until May 24, 2005. *Id*. When Garrett failed to report again, Forbus instituted a three-day suspension on May 24, 2005. Doc. 24 Exh. E at 3.

Garrett reported to Metro that she fell down the back stairs at a Metro facility on May 23, 2005, the day before her suspension. Doc. 25, Affidavit of Garrett, page 1. Garrett injured her back and left knee. *Id*.

Forbus instructed Garrett to attend a meeting between Metro supervision and her union representative on May 26, 2005.  Doc. 24 Exh. E at 3.  Garrett contacted Feeley regarding the upcoming meeting and Feeley told her to attend.  Doc. 24 Exh. I at 13.  Garrett, however, did not attend the meeting, although her union representative did.  *Id*.  Instead, Garrett picketed outside the Metro entrance.  *Id.*

On June 1, 2005, Kauffman concluded her internal EEO investigation.  *Id*.  On the same day, Metro terminated Garrett's employment.  *Id*.  Subsequently, Garrett grieved her discharge through her union.  *See generally* Doc. 24 Exh. I.  The arbitrator denied her grievance.  *Id*. at 19.  At her grievance, Garrett made no mention of her alleged disability.  *See generally* Doc. 24 Exh. I.  Instead, Garrett sought to argue that it was highly unusual to discharge an employee for failing to report within 48 hours, although not an incorrect application of Metro policy.  *Id*. at 15.  Garrett also argued through her union that her overall performance was not so below par as to justify discharge under 1510-A.  *Id*. at 15.

Article 1510-A, Paragraph 6 states, "[e]mployees shall not consistently fail to meet reasonable established performance job standards."  (Doc. 24 Ex. B at 9).  In addition to her two failures to pick up passengers in April of 2005, Metro received two complaints in April that Garrett had almost caused an accident on two separate occasions while driving her bus.  *Id*. at 11-12.  Furthermore, the arbitrator discounted Garrett's arguments that Feeeley had excused her from reporting to her supervisors while the EEO investigation was ongoing because such an expectation was unrealistic.  Doc. 24 Exh. I at 16-17.  Additionally, with regards to failing to attend the May 26, 2005, meeting, which Metro stated as the reason for her discharge, Feeley had been clear to Garrett that the ongoing EEO investigation did not relieve her of her duty to attend.  Doc. 24 Exh. I at 17.

II.		Legal Standard on Summary Judgment

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). The substantive law governing the suit identifies the essential elements of the claims at issue and, therefore, indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v.*

*Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at1075). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins*, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita*, 475 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988). The non-moving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). In reviewing evidence favorable to the party opposing a motion for

summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir. 1988).

III.       Evidentiary Issues

Before addressing Plaintiff's claims, the Court will rule on Defendant's evidentiary objections.

Federal Rule of Civil Procedure 56(e) states, in pertinent part,

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed. R. Civ. P. 56(e).  Furthermore, a party cannot manufacture a fact issue simply by contradicting previous sworn testimony without explanation. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806-07 (1999) (citing, *inter alia*, *Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 228 (5th Cir. 1984)).  When an affidavit is impeached by prior sworn testimony without sufficient explanation, the court must view that affidavit with profound skepticism. *See Herrera v. CTS Corp.*, 183 F. Supp. 2d 921, 928 (S.D. Tex. 2002) (citation omitted).  Indeed, it is within the court's discretion to disregard the affidavit altogether should the court determine that it is dealing with a "sham affidavit." *See Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) (noting that the utility of summary judgment would be greatly diminished if courts were unable to screen out "sham issues of fact").  Nevertheless, when an affidavit merely supplements or clarifies rather than contradicts prior sworn testimony, a court may consider the

affidavit when evaluating genuine issues in a motion for summary judgment. *S.W.S Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996) (citation omitted).

The parties dispute the propriety of much of Plaintiff's affidavit attached as an exhibit to Plaintiff's response to the motion for summary judgment. As discussed above, the Court is not required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins*, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)). Garrett's motions fail to construct out of her submitted evidence any coherent refutation of Metro's motion for summary judgment. Thus, the Court need not consider here whether elements of the affidavit are admissible.

IV.         Failure to State a Claim.

Metro essentially makes a separate Fed. R. Civ. P. 12(b)(6) motion. It argues that Garrett's claim fails because, in her second amended complaint, she alleges disability discrimination under Title VII, which does not protect against disability discrimination, instead of under the Americans with Disabilities Act (ADA), 42 USC § 12102 *et seq*, which does. Fed. R. Civ. P. 8(a), however, requires only a "short and plain statement" notifying the opponent of what to expect from the lawsuit. Here, Garrett clearly alleged she was discriminated against on the basis of disability. She explained in her second amended complaint that she believed Metro altered its usual policies in discharging her because she had reported injuring herself on the job. As Metro itself acknowledges, it was easy to understand what kind of lawsuit Garrett was bringing against it. The ADA extends the protections of Title VII to an additional class: the disabled. Both are generally grouped within the types of actions termed as civil rights actions.

Finding that the second amended complaint gave sufficient notice to Metro of the nature of the action, the Court will now address the merits, or lack thereof, of the instant action.

V.         Disability Discrimination Claim

Garrett alleges she suffered from disparate treatment because of her disability and has no direct evidence of discrimination. As discussed above, ADA disability discrimination claims are an effective extension of Title VII's protections, and the general aims of civil rights laws to eliminate unreasonable prejudices. As such, the same *McDonnell Douglas* burden-shifting framework used in Title VII circumstantial cases applies to this case. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004). Under this framework, the initial burden lies with the plaintiff to plead a *prima facie* case of disability discrimination. *Davis*, 383 F.3d at 316. To establish a *prima facie* case of disability discrimination, Garrett must show the following: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside the protected class, or similarly-situated employees outside the protected class were more favorably treated. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir.1999).

If Garrett establishes a *prima facie* case of discrimination, a presumption of discrimination arises, and the burden shifts to Metro to articulate a legitimate, non-discriminatory reason for its employment action. *See Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). Metro's burden is satisfied if it produces evidence that "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Id.* (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)) (emphasis in original).

If Metro articulates a reason that can support a finding that its actions were nondiscriminatory, "the mandatory inference of discrimination created by the plaintiff's *prima facie* case drops out." *Id.* (citing *Hicks*, 509 U.S. at 510-511). Garrett must then introduce evidence creating a jury question as to whether Metro was motivated by discriminatory animus. A plaintiff meets this burden by showing either (1) that defendant's articulated reason was pretextual (pretext alternative), or (2) that plaintiff's protected characteristic was a motivating factor in the decision (mixed motives alternative). *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

Although the intermediate evidentiary burdens shift back and forth, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff always remains with the plaintiff. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000). In determining whether summary judgment is appropriate, the court considers the strength of the plaintiff's *prima facie* case, the probative value of proof that the employer's explanation is false, and any other evidence that supports the employer's case and that may properly be considered for summary judgment. *Id.* at 148-49.

Since the Court decides this case on this issue of pretext, we assume, without deciding, that Garrett has established her *prima facie* case. We have assumed that Garrett has met her initial burden; the burden of production now shifts to Metro to provide a "legitimate, nondiscriminatory reason" for concluding Garrett's employment. In order to meet its burden, Metro must provide both "clear and reasonably specific reasons" for its actions. *Okoye*, 245 F.3d at 513.

Metro received customer complaints regarding Garrett. Garrett refused to respond to supervision regarding these complaints. Instead she bypassed her immediate

supervisors and told management that her supervisors had ulterior motives to discipline her. Management instituted an EEO internal investigation to ascertain whether her accusations had any truth to them. In the meantime, Metro continued to receive customer complaints regarding Garrett. Garrett refused to respond to her immediate supervisors regarding these claims because she felt management had freed her from reporting requirements pending completion of the investigation. Management made it clear she was to attend a meeting with Metro even though the EEO investigation had not concluded. Garrett did not attend the meeting. The EEO investigator informed Metro Garrett's allegations of harassment were groundless. Metro fired Garrett.

    Metro stated two reasons for firing Garrett: failure to report after being a sent a notice and falling below performance standards. The facts underlie the policy violations asserted by Metro. Metro received customer complaints regarding Garrett for unsafe bus operation and failure to pick up passengers. A bus driver who does not pick up passengers and is in danger of causing an accident fails to meet reasonable and acceptable performance standards. Metro had to take these complaints seriously. Metro tried to discuss these complaints with Garrett but she refused to attend meetings with supervision. She was eventually fired for not attending the May 26, 2005, meeting. That was evidently her last chance. Metro has proffered sufficiently clear and specific evidence for not retaining Garrett and, therefore, has met its burden of production.

    Garrett must now raise a genuine issue of material fact that Metro discriminated against her. *Okoye*, 245 F.3d at 513. (5th Cir. Tex. 2001). Garrett may meet this threshold by proving that an issue of material fact exists through circumstantial evidence, i.e., by demonstrating that an issue exists that Metro's proffered reason is a pretext for discrimination, or by providing direct evidence of discrimination. *See id.*; *Hall v. Gillman Inc.,* 81 F.3d 35, 37 (5th

Cir.1996).  As the Supreme Court acknowledged in *Reeves*, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false" may be sufficient to infer discrimination. *Reeves v. Sanderson Plumbing Products, Inc*.  530 U.S. 133, 148, 120 S.Ct. 2097, 2109 (2000). The Supreme Court has also made clear, however, that "instances [exist] where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id*.

Garrett alleges that she suffered discrimination because of disability.  She offers two fellow employees as having been more favorably treated than she.  "To establish disparate treatment a plaintiff must show that the employer gave preferential treatment to another employee under 'nearly identical' circumstances; that is, that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by . . . other employees." *Okoye*, 245 F.3d at 514.  Garrett fails to meet this burden.  Garrett alleges two other employees, Laurence Miller ("Miller") and Ron Johnson ("Johnson") were given the opportunity to work in other departments of Metro upon becoming disabled.  Doc. 25 at 3.  Garrett provides no proof that either Johnson or Miller was given these opportunities in "nearly identical" circumstances.  That is, for example, after Metro received numerous complaints concerning them and they refused to discuss these with Metro.  In fact, Garrett provides no proof of the circumstances surrounding Miller or Johnson whatsoever.

The only other proof Garrett has of discrimination is the "nexus" between reporting her injury the day before she was suspended, and soon before the decision to actually discharge her.  This is belied, however, by the fact that Metro received third party customer complaints about Garrett before she reported her injury, clearing them of the accusation they

were motivated by her injury in discharging her. Consequently, the Court finds Garrett's allegations of disability discrimination to be without merit.

VI. Retaliation Claim.

Plaintiff alleges she was retaliated against because she filed a worker's compensation claim, a written complaint with David Feeley, Vice President of Operations, ("Feeley"), and a sexual harassment lawsuit in state court. Title VII forbids an employer from "discriminat[ing] against" an employee because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a).

Plaintiffs with circumstantial evidence of retaliation must also proceed under the *McDonnell Douglas* burden shifting framework. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). Under this framework, Garrett may create an inference of discrimination by showing (1) that she engaged in an activity protected by Title VII; (2) that she suffered an adverse employment action, and (3) that there is a causal connection between the protected activity and the adverse employment action. *Id.* at 610; *see also Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 191 (5th Cir. 2001). If the plaintiff is successful, an inference of discrimination is created and the burden shifts to the defendant to articulate a non-retaliatory reason for the adverse employment decision. If the defendant articulates a legitimate reason, then the inference of discrimination falls away and plaintiff is left with the burden of proving that defendant's articulated legitimate reason was a pretext for retaliation. *Keelan v. Majesco Software Inc.*, 407 F.3d 332, 341 (5th Cir. 2005).

In determining whether an adverse employment action was taken as a result of retaliation, district courts must focus on the final decision maker. *Ackel v. Nat'l Communs., Inc.*,

339 F.3d 376, 385 (5th Cir. 2003) (internal quotations omitted). Any employer action that would be "materially adverse to a reasonable employee or job applicant" satisfies the "adverse employment action" requirement. *Burlington Northern & Santa Fe R.R. Co. v. White*, 126 S.Ct. 2405, 2409 (2006).

Again the Court decides the issue on pretext. Metro has proffered a legitimate, non-discriminatory reason: Garrett was accused of unsafe bus operation and failing to pick up passengers; and failed to meet with her supervisors to discuss these complaints. The analysis remains the same here as for disability discrimination. The Court now turns to proof of pretext.

Garrett again has no proof of retaliation. She relies solely on alleging a "nexus" between her accusations of harassment and her eventual termination. Her suggestion of a "nexus," however, remains conclusory. She does not establish a timeline between her supposedly "protected" activities and Metro's decision to discharge her. There was also a pattern of complaints about her work as a bus driver that pre-dated any of her allegedly protected activities. In fact, the uncontroverted evidence shows that when her supervisors sought to discuss these third party complaints with the plaintiff, this occasioned her accusations of harassment. Furthermore, third party complaints about Garrett's bus driving continued to occur after she accused her supervisors of various forms of harassment. Additionally, Garrett failed to present, in her briefs, any direct or circumstantial evidence of retaliatory animus, apart from conclusory statements. No reasonable fact-finder could find that Metro retaliated when faced with a chain of causation that so strongly indicates that Garrett was using accusations of harassment and discrimination to delay the disciplinary consequences of her inability to carry out her bus driver duties effectively. Consequently, the Court finds that Garrett's claim of retaliation lacks merit.

VII.        Conclusion.

While the evidence required to support an inference of discrimination varies from case to case, the evidence proffered by the plaintiff to establish the *prima facie* case and to rebut the employer's reasons must be "substantial"; otherwise, a jury cannot reasonably infer discriminatory intent. *Lawrence v. University of Texas Med. Branch*, 163 F.3d 309, 312 (5th Cir. Tex. 1999). Garrett never provides any substantiating evidence of any of her allegations. She only provides conclusory statements that actions that were taken adversely to her were the product of sexual harassment, disability discrimination or retaliation. This is not enough to survive a motion for summary judgment.

SIGNED at Houston, Texas, this 31st day of March, 2009.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE